UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TERRELL MOON,<br><br>Defendant. | CASE NO. 2:21-CR-158(1)<br><br>JUDGE SARAH D. MORRISON |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in advance of Terrell Moon's upcoming sentencing hearing. The Government agrees with the factual findings and guideline calculations from the Final Presentence Investigation Report, which set the advisory sentencing range at 15-21 months of imprisonment. The Government submits that an appropriate sentence fall within that range. Accordingly, the Government recommends a sentence of **18 months of imprisonment**, to be followed by a three-year term of supervised release, and imposition of a $100 mandatory special assessment.

### I. BACKGROUND[1]

In August 2021, the Grand Jury returned a two-count Indictment against Terrell Moon and his co-defendant, Aaron Rayford, charging each of them with being a felon in possession of a firearm. PSR, ¶¶ 1-3. On November 9, 2021, Moon pled guilty to that charge (Count 1) pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A). *Id.* at ¶ 5.

---

[1] All facts are drawn from the Final Presentence Investigation Report ("PSR").

Moon's guilty plea stemmed from an encounter with Columbus Police Officers on May 31, 2021, during which they recovered a stolen Smith & Wesson 9mm handgun in the glovebox of his car. *Id.* at ¶¶ 13-15. Earlier that day, Moon and Rayford got into a verbal altercation in a parking lot near Maloney Park. *Id.* at ¶ 13. Both men were armed, and a commotion ensued, but police officers responded before anyone was hurt. *Id.* at ¶¶ 13-15. Ultimately, officers arrested both Moon and Rayford and took them to police headquarters for questioning. *Id.* at ¶ 16. When questioned, Moon admitted that the stolen handgun in the glovebox belonged to him. *Id.* Moon, who had previously been convicted of a disabling felony conviction for rape, was charged with having a weapon under disability which was later dismissed in lieu of this federal prosecution. *Id.* at ¶¶ 16-16.

After Moon was indicted, the parties entered into a non-binding plea agreement under Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. *Id.* at ¶ 5. That agreement contained several advisory sentencing stipulations, including a Base Offense Level of 14 given that Moon was a prohibited person at the time of the offense and a 2-level enhancement because the firearm was stolen. *Id.* at ¶ 6. The parties also agreed to a 3-level reduction for timely acceptance of responsibility, resulting in a Total Offense Level of 13, but they made no representations regarding Moon's criminal history. *Id.*

On January 21, 2022, the Probation Office released Moon's Final PSR. The Probation Officer calculated a Total Offense Level of 13, which mirrored the recommendations contained in the parties' plea agreement, and a Criminal History Category of II, which results in an advisory guidelines range of 15-21 months of imprisonment. *Id.* at ¶ 56. Neither party has raised any objections to the factual findings or guideline calculations from the PSR.

## II.  LEGAL STANDARDS

After *Booker v. United States*, 543 U.S. 220 (2005), district courts must engage in a three-step sentencing procedure.  Courts must first determine the applicable guidelines range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range—along with all of the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose.  The central command in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in § 3553(a).

## III.  ANALYSIS

### A.  The Applicable Guidelines Range

The Probation Officer calculated a Total Offense Level of 13 and a Criminal History Category of II, resulting in an advisory guideline range of 15-21 months.  PSR, ¶ 56.  Neither party has raised any objections to those calculations, so the Court should adopt them at the time of sentencing.

### B.  Possible Departures from the Applicable Guidelines Range

The Probation Officer did not identify any factors that would warrant a departure from the applicable guidelines range.  *Id.* at ¶ 71.  The Government agrees that no departures are warranted in this case.

### C.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)

Finally, the Court must consider the applicable guideline range alongside the sentencing factors outlined in 18 U.S.C. § 3553(a) to fashion a sentence that is sufficient, but not greater than necessary, to meet Congress's sentencing goals.  As explained below, nothing about this case takes it outside the "heartland" of the firearm guideline from § 2K2.1.  As such, a within-guidelines sentence is appropriate.

1. The Nature and Circumstances of the Offense

The nature and circumstances of the offense are serious and troubling. Moon had been convicted of a prior felony offense for rape, and he knew full well he was no longer entitled to possess a gun. He chose to do so anyway—in violation of the law—and he must be punished accordingly. The fact that Moon, while armed, involved himself in an altercation with another individual who was armed, in a very public space, is an aggravating factor. A within-guidelines sentence is therefore appropriate.

2. The History and Characteristics of the Defendant

Moon's history and characteristics point to the same result and merit a within-guidelines sentence. His criminal history, though not as extensive as some other firearm defendants, still includes a deeply troubling conviction for anally and vaginally raping a seven-year-old child when Moon himself was age 18. PSR, ¶ 37. But for an increasingly maddening jurisprudence regarding the categorical approach for ferreting out what does (and what does not) qualify as a "crime of violence," Moon would face increased sentencing exposure for having committed such a crime. *See* U.S.S.G. § 2K2.1(a); *see also United States Wilcox*, 150 F. App'x 458, 461-62 (6th Cir. 2005) (holding that similar conviction for statutory rape in Tennessee "did not necessarily qualify as a crime of violence").[2] For this conviction, he amassed three criminal history points, which places him in Criminal History Category II. PSR, ¶ 39.

---

[2] Everyone involved in this case, including Terrell Moon, his attorney, undersigned counsel, and the probation officer, knows that Moon raped a seven-year-old, which would (and should) count as a crime of violence. But because the limited class of documents that this Court may consider does not make that fact equally plain, we are directed to turn a blind eye insofar as the calculations of Moon's advisory guidelines range. Undersigned counsel respectfully urges the Court to consider these facts under the traditional sentencing factors from § 3553(a) instead.

4

Moon's criminal history began at age 15, when he was adjudicated delinquent (twice) for receiving stolen cars. *Id.* at ¶¶ 35-36. In both cases, he was sentenced to probation and community service. *Id.* Neither of these convictions scored any criminal history points.

Moon's *adult* criminal history began at age 18, when he anally and vaginally raped a seven-year-old child. *Id.* at ¶ 37. Moon was sentenced to a seven-year term of imprisonment within the ODRC. *Id.* While in prison, he incurred a laundry list of disciplinary infractions, including refusing to submit to drug screening, threatening bodily harm, fighting and possession of contraband, among others. *Id.* Following his release from prison in 2014, Moon was placed on Post-Release Control ("PRC"). In September 2015, he was ordered to serve seven months of PRC sanction time for his involvement in a shooting. *Id.*

Moon's penchant for crime can be explained in part, though not excused, by his upbringing in the Linden neighborhood of Columbus, which was marred by illegal activity. *Id.* at ¶ 43. Moon's parents separated when he was just four years old, at which point he was raised primarily by his mother and grandparents. *Id.* Moon reported using marijuana on a weekly basis prior to his imprisonment on his rape conviction. *Id.* at ¶ 50. He struggled as a teenager, when he dropped out of high school and incurred several delinquent adjudications in juvenile court. *Id.* at ¶ 51.

Moon has fathered one child, who is three years old. *Id.* at ¶ 45. She is being raised by her grandfather due to her mother's drug addiction. *Id.* Moon has never held stable employment, though he has periodically earned money by performing in hip-hop shows around Columbus and by working seasonal janitorial jobs. *Id.* at ¶¶ 52-53. He reports suffering from PTSD and anxiety after following his arrest for rape in 2007. *Id.* at ¶ 49.

All told, Moons's history and characteristics are typical for this type of case, and they too merit a within-guidelines sentence.

### 3. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment, as Well as the Need to Afford Adequate Deterrence

The Court must also consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as to "afford adequate deterrence." 18 U.S.C. § 3553(a)(2)(A)-(B). The Government submits that an 18-month sentence will best serve these purposes.

The goals of retribution and promoting respect for the law are important considerations in any sentencing, including gun cases like this. Moon committed a serious offense. Any sentence must reflect that seriousness, and an 18-month sentence will do just that. The same goes for deterrence—both specific and general. Moon needs to know that what he did was wrong, unlawful, and will not be tolerated in the future, and that the stakes will go up with each additional crime he commits. An 18-month sentence will be the second-longest prison term he has served and will hopefully deter him (and others) from future criminal activity.

### 4. The Need to Protect the Public

The Court must also consider the need for the sentence imposed "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). An 18-month sentence will help protect the public from future crimes on Moon's behalf.

### 5. The Kinds of Sentences Available and the Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

The Court must also consider "the kinds of sentences available" and "the sentencing range established for the applicable category of offense committed by the applicable category of defendant." *Id.* § 3553(a)(3)-(4). Based on a Total Offense Level of 13 and a Criminal History Category of II, the guideline ranges falls within Zone D of the sentencing table. As a result, "the maximum term shall be satisfied by a sentence of imprisonment." U.S.S.G § 5C1.1(f).

6

### 6.  The Need to Avoid Unwarranted Sentencing Disparities

Finally, the Court must craft a sentence that accounts for "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The Government submits that a within-guidelines term of 18 months' imprisonment will meet this goal.  *See United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2018) ("Considering one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of sentencing practices.").

### 7.  Restitution

The Government is not seeking restitution in this case.

### IV.  CONCLUSION

For these reasons, the United States requests that the Court adopt the factual findings and guidelines calculations from the PSR and sentence Moon to 18 months of imprisonment, to be followed by a three-year term of supervised release, in addition to a $100 mandatory special assessment.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney


s/Noah R. Litton
NOAH R. LITTON (0090479)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Fax: (614) 469-2200
Email: Noah.Litton@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 21st day of January, 2022.

                                                             s/Noah R. Litton
                                                             NOAH R. LITTON (0090479)
                                                             Assistant United States Attorney